UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------------
SAVE THE SOUND, INC.　　　　　　　　　:　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　　　　:　　3:20-cv-1634
　　　　　　　　Plaintiff　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
THE TOWN OF DARIEN　　　　　　　　　　:　　October 29, 2020
　　　　　　　　Defendant　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------------------

**COMPLAINT**

**NATURE OF THE ACTION**

1. Plaintiff Save the Sound, Inc., brings this citizen suit pursuant to Section 505(a)(1) of the Clean Water Act ("the Act" or CWA), 33 U.S.C. § 1365(a)(1), against the Town of Darien to address and abate its continuing violations of the Act.

**JURISDICTION AND VENUE**

2. Jurisdiction is conferred upon this court pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

3. On July 17, 2020, Plaintiff gave notice of the violations and Plaintiff's intent to file suit to the Connecticut Department of Energy and Environmental Protection (CT DEEP), the Administrator of the United States Environmental Protection Agency (EPA), the Regional Administrator of EPA Region 1, and Defendant Town of Darien ("Defendant" or "Darien"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

4.      More than sixty (60) days have passed since notice was served pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5.      As of the date of the filing of this complaint, neither EPA nor CT DEEP has commenced or diligently prosecuted: (1) a court action to redress violations under Section 505(b)(1)(B) of the CWA, 33 U.S.C. § 1365(b)(1)(B); or (2) an administrative penalty action that would preempt this action pursuant to Section 309(g)(6)(A) of the CWA, 33 U.S.C. § 1319(g)(6)(A).

6.      Venue is appropriate in this district pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located therein.

## PARTIES

7.      Plaintiff Save the Sound, Inc., formerly known as Connecticut Fund for the Environment, was founded in 1978 to protect and improve the land, air, and water of Connecticut using advocacy and scientific expertise to achieve results that benefit our environment for current and future generations. Save the Sound seeks to protect, conserve and protect the environmental health and natural resources of the Long Island Sound. Save the Sound is a 501(c)(3) not-for-profit corporation, incorporated under the laws of the State of Connecticut, with its principal place of business at 900 Chapel Street, New Haven, CT 06510. Save the Sound represents more than 3,800 members in Connecticut and New York. Save the Sound has represented the interests of its membership in legal proceedings before trial and appellate courts and federal and state administrative agencies in various proceedings in which Save the Sound sought to protect the environment and natural resources for its members and the citizens of Connecticut.

8.      Hereinafter, the plaintiff is referred to in this complaint as Save the Sound.

9.      Save the Sound is a "citizen" for purposes of Section 505 of the CWA, 33 U.S.C. § 1365, and files this citizen suit on behalf of itself and its members.

10. Members of Save the Sound use the rivers and waterways of the state, including Goodwives River, Stony Brook, and Long Island Sound and its beaches and embayments for various recreational uses including, but not limited to, swimming, fishing, and boating, and for aesthetic enjoyment. The violations alleged herein cause or contribute to pollution in waters used and enjoyed by Save the Sound members, and are injurious to human health, wildlife, recreational, and commercial activities in or around these rivers and waterways and Long Island Sound, and other uses pursued and enjoyed by Save the Sound members. The violations alleged herein result in public health risks and negative impacts to waterways, threaten the health and welfare of Save the Sound members, impair and threaten their use and enjoyment of rivers and waterways of the state, Long Island Sound, and other waters, and deny them the level of water quality to which they are entitled under the Clean Water Act. Save the Sound members have an interest that is adversely affected by Defendant's illegal discharges, bypasses, and violations of the Clean Water Act.

11. Defendant Town of Darien is a political subdivision of the State of Connecticut, is a municipality within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), and is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

12. Defendant operates a sanitary sewer collection system ("Collection System") located in Darien, Connecticut and the Defendant's wastewater is treated in Stamford by the Stamford Water Pollution Control Authority (SWPCA) under NPDES Permit No. CT0101087.

## FACTUAL ALLEGATIONS

13. Long Island Sound is a unique estuary that has two connections to the sea and receives the flow of several major rivers that drain fresh water from New England and as far as the U.S. border with Quebec. The Sound provides feeding, breeding, nesting, and nursery areas for a

diversity of plant and animal life, including 1200 species of invertebrates, 170 species of fish, and dozens of species of migratory birds. In 1987, Congress designated Long Island Sound as an Estuary of National Significance.

14. As a result of pollution, Long Island Sound is suffering from continued degradation in water quality, leading to low shellfish harvests and the closure of shellfish beds, depletion of fishing stocks and fish consumption advisories, periodic beach closures, restrictions on recreational activities, low dissolved oxygen (hypoxia), pathogen contamination, toxic contamination, and floatable debris, adversely impacting businesses, public health, recreation, and aesthetics.

15. The Goodwives River is a tributary to Long Island Sound located in Darien, CT. It discharges into Gorham's Pond.

16. Goodwives River, Stony Brook, and Long Island Sound are the receiving water bodies for raw sewage from sanitary sewer pipes which are supposed to transport sanitary wastewater from homes, businesses, public toilet facilities, and other locations to wastewater treatment plants for removal of pollutants in order to make the wastewater safe for discharge into the environment. Sewage collection systems consist of sewer pipes, along with associated facilities including, pumping stations, power and other equipment, and wastewater treatment facilities. Sewage collection systems are generally owned and operated by municipalities or regional authorities comprised of several municipalities. Neglect of basic maintenance and failure to perform routine and preventative maintenance of the various components of sewage collection systems allows the discharge of raw or partially treated sewage into streams and rivers, which ultimately discharge into Long Island Sound polluting and impairing the water quality of these streams, rivers, and Long Island Sound.

17. The Clean Water Act was enacted by Congress in 1972 and it, along with subsequent amendments, mandates that our nation's water bodies be made clean. For Long Island Sound, this means that the Sound must meet water quality standards that make it safe for fish, shellfish, humans, and all other species that live on it, in it, and near it.

18. In order to meet the mandate of the Clean Water Act, the entire sanitary sewer system, both the sewage treatment plants and the pipes that transport sanitary sewage effluent to the treatment plants, must be maintained and in good working order. In a well-maintained system only wastewater from homes and businesses would be transported through the sanitary sewer pipes for effective treatment at the sewage treatment plant, which would then discharge treated water into a receiving water body. Failure to perform routine and preventative maintenance of the pipes, manholes, and electrical and mechanical equipment in the wastewater collection system can result in discharges of raw and partially treated sewage at various locations in the wastewater collection and treatment system into receiving water bodies causing pollution and conditions detrimental to the public health and the environment. Pipes may also become blocked by fats, oils, and grease (FOG) from wastewater discharged from food service establishments into the municipal wastewater collection system or by other substances and materials. These blockages of FOG and other materials in the pipes transporting sanitary sewage result in the discharge of raw sewage into receiving water bodies.

## CLEAN WATER ACT STATUTORY SCHEME

19. The CWA is a comprehensive statute designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Section 101(a) of the CWA, 33 U.S.C. § 1251(a). To achieve that goal, Section 301(a) of the CWA, U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters of the United States except in compliance with the

terms and conditions of a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. The term "pollutant" is defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6) to include "sewage." "Discharge of a pollutant" is defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12) as "any addition of any pollutant to navigable waters from any point source." Each violation of the permit and each discharge that is not authorized by the permit is a violation of the Clean Water Act.

20. Darien does not have a NPDES permit for the discharge of any wastewater. Darien is included in the service area for the Stamford Water Pollution Control Authority (SWPCA). The SWPCA treats the Darien's wastewater under NPDES Permit No. CT0101087.

21. Darien owns and maintains the sewage collection system within its geographic limits.

22. Darien has failed and continues to fail to comply with the Clean Water Act by discharging raw sewage from its sewage collection system without a NPDES permit.

## CLAIM FOR RELIEF
## UNAUTHORIZED DISCHARGES

23. Paragraphs 1 through 23 are incorporated herein by reference.

24. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by a valid permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

25. Section 502(12) of the Clean Water Act, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

26. Section 502(6) of the Clean Water Act, 33 U.S.C. § 1362(6), defines "pollutant" to include, among other things, chemical wastes, biological materials, rock, sand, and industrial waste discharged into water.

27. Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14) defines "point source" broadly to include "any discernable, confined and discrete conveyance, included but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

28. Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including territorial seas." Long Island Sound, and the rivers, streams, bays, and other waters that flow into it are navigable waters of the United States.

29. On numerous occasions, the Defendant has discharged untreated wastewater to navigable waters through point sources within its wastewater collection system.

30. The Defendant does not have a NPDES permit for the discharge of any effluent from its collection system.

31. Beginning in March 2015, the Defendant has reported numerous unauthorized discharges of raw sewage in violation of the Clean Water Act. *See* Appendix I. The majority of these reported unauthorized discharges of raw sewage were caused by excessive flows due to a storm event or by a sewer line blockage.

32. The discharge of these pollutants affects the public health and safety, the health of marine life, causes degradation of water quality, and adversely affects the aesthetic quality and enjoyment of Goodwives River, Stony Brook, and Long Island Sound.

33. As a result of these unauthorized discharges, Defendant is in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for each day that it discharged untreated wastewater through point sources not authorized by a permit.

34. Based upon information and belief, Defendant's violations of the CWA are ongoing and continuous.

## **RELIEF SOUGHT**

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

a. Declare that the Defendant has violated and continues to be in violation of the Act as alleged herein;

b. Permanently enjoin the Defendant from discharging pollutants pursuant to Sections 505(a) and (d), 33 U.S.C. §§ 1365(a) and (d);

c. Order the Defendant to take all steps necessary to eliminate the discharge of pollutants from its collection system, including, but not limited to, the completion of an Inflow and Infiltration Analysis, the completion of a Sanitary Sewer Evaluation Survey (SSES), the development and implementation of a Remediation Plan based on SSES results, the development and implementation of a Capacity, Management, Operation, and Maintenance Plan, and the continued implementation of a Fats, Oils, and Grease Program;

d. Order the Defendant to pay a civil penalty not to exceed $55,800 per day, per violation, for all violations of the CWA occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C § 1319(d), 1365(a), and 40 C.F.R §§ 19.1-19.4;

e. Award Plaintiff costs of litigation, including, reasonable attorney fees and expert witness fees pursuant to Section 505(d), 33 U.S.C. §1365(d); and

    f.   Award such other relief as the Court deems just and fair.

Dated this 29th day of October, 2020.

                                      SAVE THE SOUND

                        By:  */s/ Katherine M. Fiedler*
                             Katherine M. Fiedler, Esq.
                             Staff Attorney
                             Federal Bar #ct30709
                             Save the Sound
                             900 Chapel Street, Suite 2202
                             New Haven, CT 06510
                             Phone: (203) 787-0646 ext. 108
                             Fax: (203) 787-0246
                             Email: kfiedler@savethesound.org

                             Roger Reynolds, Esq.
                             Senior Legal Counsel
                             Federal Bar #ct18126
                             Save the Sound
                             900 Chapel Street, Suite 2202
                             New Haven, CT 06510
                             Phone: (203) 787-0646 ext. 105
                             Fax: (203) 787-0246
                             Email: rreynolds@savethesound.org

                             ITS ATTORNEYS

# APPENDIX I

1. 3/16/15 – Sewage Bypass caused by electrical equipment failure; 5500 gallons of raw sewage; reached Stonybrook River; intersection of Stonybrook and Boston Post Road

2. 3/2/18 – Sewage Bypass caused by excessive flows (storm event); 23,668 gallons of raw sewage; reached Goodwives River; Old Kings Highway North/Sedgewick Road

3. 3/8/18 – Sewage Bypass caused by excessive flows (storm event); 27,660 gallons of raw sewage; reached Goodwives River; 25 Old Kings Highway North

4. 4/16/18 – Sewage Bypass caused by excessive flows (storm event); 13,500 gallons of raw sewage; reached Goodwives River; 11 Old Kings Hwy North

5. 9/25/18 – Sewage Bypass caused by excessive flows (storm event); 2400 gallons of raw sewage; reached Goodwives River; 11 Old Kings Hwy North

6. 9/25/18 – Sewage Bypass caused by excessive flows (storm event); 170 gallons of raw sewage; reached Long Island Sound/Noroton Bay; 141 Nearwater Lane

7. 9/27/18 – Sewage Bypass caused by excessive flows (storm event); 120 gallons of raw sewage; reached Stonybrook River; 25 Renshaw Road

8. 10/3/18 – Sewage Bypass caused by sewer line blockage (other); 693,542 gallons of raw sewage; reached Stonybrook River; 1950 Boston Post Rd

9. 10/3/18 – Sewage Bypass caused by excessive flows (storm event); 360 gallons of raw sewage; reached Goodwives River; 11 Old Kings Hwy North

10. 10/4/18 – Sewage Bypass caused by excessive flows (storm event); 200 gallons of raw sewage; reached Stonybrook River; 25 Renshaw Road

11. 11/14/18 – Sewage Bypass caused by sewer line blockage (other); 250 gallons of raw sewage; reached Stonybrook River; 2 Renshaw Rd (Town Hall Baseball Field)

12. 1/24/19 – Sewage Bypass caused by excessive flows (storm event); 678 gallons of raw sewage; reached Goodwives River; 25 Old Kings Highway North

13. 2/4/20 – Sewage Bypass, unknown cause; 20 gallons of raw sewage, reached Stonybrook River tributary; Noroton Avenue at Park Place

14. 8/14/20 – Sewage Bypass caused by sewer line blockage (roots); 50 gallons of raw sewage; reached Tokeneke Brook; Post Road at Birch Road