UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| SAVE THE SOUND, INC. | : | CIVIL ACTION NO. |
| | : | 3:20-cv-01634-JCH |
| Plaintiff | : | |
| v. | : | |
| THE TOWN OF DARIEN | : | October 29, 2020 |
| Defendant | : | |

---

**CONSENT DECREE**

Plaintiff Save the Sound, Inc. ("Save the Sound") and defendant Town of Darien ("Darien") (collectively, the "Parties") hereby enter into this Consent Decree in settlement of this action.

WHEREAS, Save the Sound commenced this action asserting, inter alia, claims that Darien was out of compliance with certain provisions of the Clean Water Act (33 U.S.C. § 1365 et seq.) ("CWA");

WHEREAS, Darien is a person under Section 502(5) of the CWA, 33 U.S.C. § 1362(5);

WHEREAS, Darien is the owner and operator of a sanitary sewer collection system ("Collection System");

WHEREAS, parts of the Town's Collection System conveys municipal wastewater to the Stamford Water Pollution Control Facility;

WHEREAS, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes unlawful the discharge of pollutants to waters of the United States except, among other things, in compliance

with the terms and conditions of a National Pollution Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342;

WHEREAS, discharges of untreated sewage into Long Island Sound and its tributaries from various components of Darien's Collection System have occurred;

WHEREAS, each of the various components of the Collection System from which the Town has discharged untreated sewage is a point source, as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14);

WHEREAS, Save the Sound alleges that Darien's unauthorized discharges of pollutants to waters of the United States violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a); and

WHEREAS, Darien and Save the Sound have worked cooperatively to identify measures to eliminate or reduce discharges of untreated sewage.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Darien of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

I.     **JURISDICTION AND VENUE**

1.     **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331, and 33 U.S.C. § 1365(a). Save the Sound has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between the Parties. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

2. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because Darien is located, and the events giving rise to this action occurred, within this judicial district.

3. **Consent.** For purposes of this Consent Decree, or any action to enforce the Consent Decree, Darien consents to the Court's jurisdiction over this Consent Decree. For purposes of this Consent Decree, Darien consents to venue in this judicial district.

## II. APPLICABILITY

4. The provisions of this Consent Decree shall apply to and be binding upon Save the Sound and Darien.

5. Darien shall provide a copy of this Consent Decree to the Superintendent of the Sewer, the Sewer Commission, the Water Pollution Control Authority, and the Director of Public Works.

## III. DEFINITIONS

6. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the CWA or in regulations promulgated under the CWA shall have the meaning ascribed to them in the CWA or in the regulations promulgated thereunder. Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

   a. "The Agencies" shall mean the United States Environmental Protection Agency and the United States Department of Justice.

   b. Day(s): When the period of time is stated in days: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday, or a municipal, state, or federal holiday, the period

continues to run until the end of the next day that is not a Saturday, Sunday, or a municipal, state, or federal holiday.

c. Date of Lodging: the day Save the Sound submits this Consent Decree to the Agencies for the forty-five (45) day review period required by 33 U.S.C. § 1365(c)(3).

d. Effective Date: the day the Court enters this Consent Decree after the expiration of the forty-five (45) day review period required by 33 U.S.C. § 1365(c)(3).

e. Term of this Consent Decree: the period beginning on the Effective Date and ending five (5) years after the Effective Date provided that Save the Sound has received the Sanitary Sewer Evaluation Survey (SSES) Report, Capacity, Management, Operation, and Maintenance (CMOM) Plan, and confirmation of payments by Darien of the amounts provided for in Paragraphs 7 and 8, and Darien has completed fifty (50) percent of the cleaning and closed circuit television (CCTV), as provided in Paragraph 14 herein, which is the "Termination Date."

## IV. PAYMENTS

7. Environmental Benefit Payment in Lieu of Penalty. Darien shall pay twenty-five thousand dollars ($25,000) in the form of a certified bank check to the "Darien Land Trust" all of which shall be used for the Olson Woods Pond Remediation and Enhancement Project for the purposes of reduction, mitigation, and/or remediation of pollution or of the effects of pollution in Long Island Sound and its tributary waters. Darien shall notify Save the Sound in writing concurrently when the payment is made and provide a copy of the check. None of this payment shall be disbursed to Save the Sound.

8.       **Fees, Costs and Expenses.** Darien shall pay a sum of twenty-five thousand dollars ($25,000), as full and complete satisfaction of Save the Sound's claims for attorneys' fees and costs, including investigative and engineering expert costs, against Darien. The payment will be provided to Save the Sound within thirty (30) days after the Effective Date of this Consent Decree. The check shall be payable to "Save the Sound."

V.     **FEDERAL REVIEW OF CONSENT DECREE**

9.       **Review by Agencies.**  The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the Agencies. Therefore, upon signing of this Consent Decree by the Parties, Save the Sound shall serve copies of this Consent Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.  If for any reason the United States should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Consent Decree raised by the United States.

10.      **Entry of Consent Decree.**  Upon the expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Consent Decree.  This Consent Decree shall take effect on the date it is entered by this Court and shall terminate, as described in Paragraph 6(d) and (e).  If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Consent Decree raised by the Court.

VI.    **SEWER SYSTEM MANAGEMENT AND OPERATIONAL MEASURES**

11. **I/I Analysis.** Within six (6) months of the Effective Date of the Consent Decree, Darien shall perform flow monitoring sufficient to perform an infiltration and inflow (I/I) analysis that identifies locations of excessive inflow and excessive infiltration in the Stony Brook Sewer Shed, and its tributary sewersheds, of the Darien Collection System.

12. **SSES.** Within five hundred and forty (540) days of the completion of the I/I analysis, Darien shall perform a Sanitary Sewer Evaluation Survey (SSES) in the Stony Brook Sewer Shed, and its tributary sewersheds, of the Darien Collection System in order to locate and identify specific sources of I/I. The SSES shall include manhole inspections, flow isolation, gravity pipe inspections via closed circuit television (CCTV), and smoke testing.

13. **SSES Report.** Within five hundred and seventy (570) days of the completion of the I/I analysis and upon completion of the SSES, Darien shall submit a draft SSES Report based upon best engineering practices to Save the Sound for comment that includes the following:

   a. A summary of the review of existing data and past and ongoing related studies and projects;

   b. A clear explanation of the methodology used for developing the flow monitoring and SSES strategies;

   c. Maps and plans showing the selected meter areas, meter locations, and SSES findings and recommendations;

   d. A detailed explanation of how metering data was analyzed, verified, and utilized to calculate the various flow components, including the results of an I/I analysis;

   e. A description of the SSES investigative activities performed, such as smoke testing, dye testing, manhole inspection, and CCTV inspections, and criteria for

    their use in specific areas of the collection system based on past history, prior data review, and flow monitoring analysis;

f. A description of the criteria used as part of the SSES investigations, such as the National Association of Sewer Service Companies (NASSCO) Pipeline Assessment Certification Program (PACP) standards for pipe condition assessment and Manhole Assessment Certification Program (MACP) standards for manhole condition assessment;

g. A detailed explanation of the results of the analysis performed to prioritize the schedule for collection system asset rehabilitation;

h. A detailed explanation of how the data on the collection system resulting from SSES related investigations was managed and maintained;

i. A description of how the Flow Monitoring Program results were used for prioritizing targeted Phase I SSES investigations;

j. A summary of SSES activities, including flow monitoring, and I/I analysis, findings, and recommendations, including Pump Station improvement recommendations;

k. Cost estimates and a proposed schedule for the preliminary remediation plan (as defined below); and

l. Recommendations for a future flow monitoring program (including recommended meter locations) for additional phases to the program as needed.

 The SSES Report shall be provided to Save the Sound for review and comment before finalization. Save the Sound shall have thirty (30) days to provide comment and confirm its approval of the proposed schedule, and such approval should not be unreasonably withheld.

Darien shall finalize the SSES Report no later than thirty (30) days after receiving Save the Sound's comments and the Preliminary Remediation Plan, which shall include an identification of the repairs to be performed to address the issues identified in the SSES and a schedule for the completion of the repairs (the "Preliminary Remediation Plan"), shall become a final remediation plan and schedule (the "Final Remediation Plan and Schedule").

If the Parties are unable to agree upon a Schedule for the Preliminary Remediation Plan, the parties may ask the Court to impose a reasonable Schedule. Save the Sound shall retain all rights and remedies, and Darien shall retain all rights and defenses, that were available to them under the Complaint and the Clean Water Act regarding the Schedule, and the entry of this Consent Order shall not be construed as, or constitute, an admission of law or fact in any manner by either party. Darien shall not assert or make any claim that Save the Sound has sacrificed any rights with respect to the Schedule, or has not pursued its rights with respect to the Schedule in a timely manner, by virtue of having entered into this Consent Decree.

14. **CMOM.** Within two (2) years of the Effective Date of the Consent Decree, Darien shall submit to Save the Sound for comment a Capacity, Management, Operation, and Maintenance Plan ("CMOM Plan") in accordance with the U.S. Environmental Protection Agency's "Guide for Evaluating CMOM Programs at Sanitary Sewer Collection Systems" (January 2005).

    a. The CMOM Plan shall include a program for sewer cleaning and CCTV investigation of the Town's sewage Collection System, which initially prioritizes the Stony Brook Sewer Shed and its tributary sewersheds. The Program shall require Darien to, at a minimum, clean and CCTV investigate ten (10) percent of its entire system each year for a period of ten (10) years. The Program shall include a tracking

      database for all activities.  Cleaning crews shall be formally trained on the standardized operating procedure.  Darien shall maintain records documenting staff training.

  b.  The CMOM Plan shall be provided to Save the Sound for review and comment before finalization. Save the Sound shall have thirty (30) days to provide comment. Darien shall finalize the CMOM Plan no later than thirty (30) days after receiving Save the Sound's comments. Upon finalization, the CMOM Plan shall be immediately and continuously implemented.

15.    **Fats, Oils, and Grease (FOG) Program.** Darien shall continue implementation of its Fats, Oils, and Grease (FOG) Program designed so that fats, oils, and grease accumulations are less likely to impact the Collection System and do not contribute to bypasses, including, but not limited, to:

  a.  provision of educational materials on proper grease handling and disposal best management practices to grease generating properties ("GGPs"); and

  b.  development of an ordinance requiring grease trap installation and proper maintenance and grease disposal at GGPs that will provide for:

      i.  routine and random inspections of GGPs, such as food service establishments; and

      ii.  development of an enforcement mechanism in the FOG program based on inspection results or the occurrence of FOG-related sanitary sewer overflows attributable to a GGP.

**VII.   REPORTING**

16. Darien shall submit annual reports to Save the Sound detailing all progress towards compliance with the Consent Decree made since the last reporting deadline, including the metrics listed in Appendix I.

## VIII. FORCE MAJEURE

17. "Force Majeure," for purposes of the Consent Decree, is defined as any event arising from causes beyond the control of Darien, of any entity controlled by Darien or of Darien's engineers, consultants, and contractors, including acts of nature, weather related conditions, and pandemics that delays or prevents the timely performance of any obligation under the Consent Decree notwithstanding Darien's efforts to fulfill the obligation.

18. The requirement that Darien exercise "best efforts" includes using best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the extent feasible. "Force Majeure" does not include Darien's financial inability to perform any obligation under this Consent Decree.

19. If any event occurs that may delay or prevent the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Darien shall notify Save the Sound via email within ten (10) working days after Darien first knew or should have known that the event might cause a delay. Within ten (10) additional working days thereafter, Darien shall submit to Save the Sound, at the addresses specified in Section X (Notice), a written explanation of the cause(s) of any actual or expected delay or noncompliance, the anticipated duration of any delay, the measure(s) taken and to be taken by Darien to prevent or minimize the delay, a proposed schedule for the implementation of such measures, and a statement as to whether, in the opinion of Darien, such event may cause or contribute to an endangerment to public health, welfare, or the environment ("Force Majeure Notice"). Failure to provide timely

and complete Force Majeure Notice in accordance with this Paragraph shall constitute a waiver of any claim of Force Majeure with respect to the event in question.

20. If Save the Sound agrees that a delay or anticipated delay is attributable to Force Majeure, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event shall be extended for a period of time as is necessary to complete these obligations.

21. If Save the Sound does not agree the delay or anticipated delay is attributable to Force Majeure, or on the number of days of noncompliance caused by such event, Save the Sound will notify Darien in writing of its decision within ten (10) working days of receipt of Darien's Force Majeure Notice. In any Force Majeure claims, Darien shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that "best efforts" were exercised to avoid and mitigate the effects of the delay, and that Darien complied with the requirements of Paragraph 19, above. If Darien carries this burden, the delay at issue shall be deemed not to be a violation by Darien of the affected obligation(s) of this Consent Decree.

22. Delay in performance of any obligation under this Consent Decree shall not automatically justify or excuse delay in complying with any subsequent obligation or requirement of this Consent Decree.

IX. **EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS**

23. This Consent Decree resolves the civil claims of Save the Sound for the violations alleged in their Complaint filed in this action through the Date of Lodging except with respect to claims and defenses related to the Schedule as set forth in Paragraph 13 and Section XI.

X.    **NOTICES**

24.    Any notice, demand, copies of documents, and other communications required to be made under the provisions of this Consent Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and: (a) personally served; (b) mailed by United States registered or certified mail, return receipt requested, postage prepaid; or (c) sent by a nationally recognized courier service (i.e., Federal Express). Notices shall be directed to the Parties at their respective addresses set forth below.

Notices for Save the Sound shall be sent to:

>Katherine Fiedler
>Save the Sound
>900 Chapel Street, Suite 2202
>New Haven, CT 06510
>kfiedler@savethesound.org

>and

>Roger Reynolds
>Save the Sound
>900 Chapel Street, Suite 2202
>New Haven, CT 06510
>rreynolds@savethesound.org

Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to Save the Sound.

Notice for Darien shall be sent to:

>Town of Darien
>Water Pollution Control Authority and
>Board of Selectman
>2 Renshaw Road
>Darien, CT  06820

with a copy to:

>Jane Kimball Warren, Esq.
>McCarter & English, LLP

CityPlace I, 36th Floor
185 Asylum Street
Hartford, CT  06103

Notices sent to the individuals and entities listed above shall be deemed as notice to Darien. Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this Paragraph.

## XI.   RETENTION OF JURISDICTION

25.   The Court shall retain jurisdiction over this Consent Decree for no more than three (3) years after the Termination Date solely to resolve any claim by Save the Sound that Darien unreasonably failed to complete: (a) eighty (80) percent of the cleaning and CCTV required in Paragraph 14; and (b) the obligations required under the Schedule during the Term of this Consent Decree and the three (3) years following the Termination Date.  Save the Sound can seek an order compelling the Town to complete its obligations pursuant to the remediation Schedule provided that only unreasonable delays shall be a basis for such an order.

## XII.   MISCELLANEOUS

26.   The Parties agree to consent to reasonable extensions of any of the aforementioned deadlines provided the party requesting the extension has made reasonable efforts to meet such deadline and has provided a detailed explanation of the reasons for the delay.  A delay, caused by any third party, in obtaining any required approvals or permits shall be an appropriate basis for an extension.  Notice of any request and approvals thereof shall be provided in accordance with Paragraph 24.

27.   **Entire Agreement.** This Consent Decree and its Appendices contain the entire agreement between the Parties and no major modifications shall be valid unless in writing, mutually agreed to and executed by the Parties, and entered by the Court; except that the Parties

may mutually agree in writing to minor modifications of this Consent Decree without further consent of the Court and such written minor modifications shall be deemed incorporated into this Consent Decree.

28. **Representatives.** Each undersigned representative of Darien and Save the Sound certifies that he or she is fully authorized to enter into the terms and conditions of the Consent Decree and to execute and legally bind the Party he or she represents to this document.

29. **Execution in Counterparts.** This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

30. **Headings.** The section and paragraph headings contained in this Consent Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Consent Decree.

31. **Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

32. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Consent Decree, but shall be construed as if all Parties prepared this Consent Decree, and any rules of construction to the contrary are hereby specifically waived.  The terms of this Consent Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by the Clean Water Act or specifically herein.

Judgement is hereby entered in accordance with the foregoing Consent Decree this _____ day of _____, 20\_\_.


_____
UNITED STATES DISTRICT JUDGE

The following Parties hereby consent to the entry of this Consent Decree:

For Plaintiff Save the Sound

By: ___*Katherine Fiedler*___  
    Katherine M. Fiedler  
    Staff Attorney  
    Save the Sound  
    900 Chapel Street, Suite 2202  
    New Haven, CT 06510  
    Federal Bar #ct30709

10/30/2020  
DATE

By: ___*Roger Reynolds*___  
    Roger Reynolds  
    Senior Legal Counsel  
    Save the Sound  
    900 Chapel Street, Suite 2202  
    New Haven, CT 06510  
    Federal Bar #ct18126

10/30/2020  
DATE

ITS ATTORNEYS

For Defendant Town of Darien, Connecticut

By: _____  
    Jane Kimball Warren, Esq.  
    McCarter & English, LLP  
    CityPlace I, 36th Floor  
    185 Asylum Street  
    Hartford, CT  06103  
    Federal Bar #ct10393

_____  
DATE

ITS ATTORNEY

The following Parties hereby consent to the entry of this Consent Decree:

For Plaintiff Save the Sound

By: _____          _____
    Katherine M. Fiedler                                                   DATE
    Staff Attorney
    Save the Sound
    900 Chapel Street, Suite 2202
    New Haven, CT 06510
    Federal Bar #ct30709


By: _____          _____
    Roger Reynolds                                                        DATE
    Senior Legal Counsel
    Save the Sound
    900 Chapel Street, Suite 2202
    New Haven, CT 06510
    Federal Bar #ct18126

ITS ATTORNEYS


For Defendant Town of Darien, Connecticut

By: ___/s/ Jane K. Warren_____          __10-30-2020_____
    Jane Kimball Warren, Esq.                                        DATE
    McCarter & English, LLP
    CityPlace I, 36th Floor
    185 Asylum Street
    Hartford, CT  06103
    Federal Bar #ct10393

ITS ATTORNEY

# APPENDIX I

## Reporting Requirements

**A. SSES Study/Report**

    i. Number of flow meters installed

    ii. Basis for flow meter placement

    iii. Number of rain gauges installed (typically one rain gauge is installed every 5 – 10 square miles of tributary flow area)

    iv. Number of rain events during flow monitoring, including dates and rainfall amounts

    v. Linear miles of pipes inspected with CCTV

    vi. Number of manholes inspected

    vii. Linear miles of pipe smoke tested

    viii. Number of dye tests performed

    ix. Number of pump stations inspected

    x. Number of public inflow sources identified for removal

    xi. Number of private inflow sources identified for removal

    xii. Criteria for manhole rehabilitation

    xiii. Criteria for pipe rehabilitation

    xiv. Linear miles of pipes identified for rehabilitation

        1. Linear miles of pipe identified for full pipe replacements

        2. Linear miles of pipe identified for full pipe lining

        3. Number of pipe spot repairs identified

    xv. Number of manholes identified for rehabilitation

      xvi. Number of manhole covers identified for replacement

     xvii. Number of pump stations identified for rehabilitation

    xviii. Estimate of total money to be spent to repair the collection system

**B. Repairs**

        i. Money spent to date to repair the system

       ii. Linear miles of pipe rehabilitated

          1. Linear miles of pipe lined

          2. Linear miles of pipe with full pipe replacement

          3. Number of spot repairs performed with subsequent linear feet of pipes spot repaired

      iii. Manholes rehabilitated

      iv. Manhole covers replaced

       v. Public inflow sources removed

      vi. Private inflow sources removed

     vii. Number of pump station rehabilitated

    viii. Post-rehabilitation flow monitoring

          1. Examine meter data from the Town's permanently installed pump station flow meters and metered crossings to Stamford

          2. Monitor existing rain gauges within the Darien sewershed

          3. Utilize industry accepted benchmarking to estimate I/I reduction

      ix. Estimate of I&I removed due to rehabilitation